UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
IN RE:

Chapter 7

SONIA L. SMOOT,

Case No. 10-76793-dte

              Debtor.
---------------------------------------------------------------X
SONIA L. SMOOT,

Adv. Pro. No.: 10-8750-dte

              Plaintiff,

    -against -

WACHOVIA MORTGAGE,

              Defendant.
---------------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER

*Appearances:*

Law Offices of Jonathan M. Rosen
*Attorneys for Plaintiff*
By: Russell D. Daly, Esq.
310 Old Country Road
Suite 104
Garden City, NY 11530

Rosner Nocera & Ragone LLP
*Attorneys for Defendant*
By: John P. Foudy, Esq.
40 Wall Street
23rd Floor
New York, NY 10005

Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before this Court is the Plaintiff Debtor's motion for summary judgment (the "Motion") and the cross motion for summary judgment by Wachovia Mortgage, the Defendant (the "Cross Motion").  At issue is whether the Defendant's second mortgage lien upon the Debtor's primary residence located at 115-58 238th Street, Elmont, New York 11003 (the "Property") can be declared wholly unsecured and therefore void pursuant to 11 U.S.C. § 502.  This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and venue is proper pursuant to 28 U.S.C. § 1409. This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K) and (O) and 11 U.S.C. § 506.  The following constitutes the Court's findings of fact and conclusions of law as mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTS

The parties have stipulated to the following undisputed facts.  On September 20, 2006, the Debtor took out two loans from World Savings Bank, the Defendant's predecessor, in exchange for (1) a first mortgage in the original principal amount of $349,800.00, and (2) second mortgage with respect to a home equity line of credit ("HELOC") in the original principal amount of up to $69,960.00 (the "Credit Line Mortgage"). The HELOC is evidenced by an Equity Line of Credit Agreement and Disclosure Statement ("LOC Agreement").  The Debtor used the funds to purchase the subject Property for $466,400.00.  Both the first mortgage and the Credit Line Mortgage gave the Defendant security interests in the Property and such mortgages were recorded with the Nassau County Clerk's Office.

The Debtor filed a petition for bankruptcy relief under Chapter 7 on August 30, 2010 (the "Petition Date") and commenced this adversary proceeding to avoid the second mortgage lien on

November 5, 2010.  On the Petition Date, the total balance due on the first mortgage was $370,601.02 and the total balance due on the HELOC was $70,749.67.  The Plaintiff's appraisal of the Property valued it at $340,000.00, while the Defendant's appraisal valued the Property at $325,000.00.  The Debtor obtained her chapter 7 discharge on November 24, 2010.

## DISCUSSION

It is appropriate for a Court to grant a motion for summary judgment if there are no genuine triable issues of material fact.  *See e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).  The factual question before this Court is the value of the Property.  Regardless of which appraisal value is adopted by this Court, it is undisputed that the amount outstanding on the first mortgage exceeds the value of the Property and the second mortgage lien is wholly unsecured by the value of the Property.  Accordingly, there is no genuine triable issue of material fact.  The only inquiry is whether the Credit Line Mortgage can be voided and "stripped off" pursuant to 11 U.S.C. § 506.  Therefore, the Motion and Cross Motion are appropriate for summary judgment.

In the first instance, the Court needs to determine whether a credit line mortgage based upon a home equity line of credit is treated the same as a mortgage.  The Court looks to New York state law as such "property interests are created and defined by state law."  *Butner v. United States*, 440 U.S. 48, 54-55, 59 L. Ed. 2d 136, 99 S. Ct. 914 (1979).  Pursuant to  New York Real Property Law § 281, a "credit line mortgage" means:

> any mortgage or deed of trust … which states that it secures indebtedness under a note, credit agreement or other financing agreement that reflects the fact that the parties reasonably contemplate entering into a series of advances, payments and readvances, and that limits the aggregate amount at any time outstanding to a maximum amount specified in such mortgage or deed of trust….

2

N.Y. Real Prop. Law § 281(1)(a).

The Credit Line Mortgage at issue and the HELOC provide that in exchange for the ability of the Debtor to borrow up to a maximum amount of $69,960.00, the Debtor acknowledges that she would repay the sums that were advanced to her, and that she would mortgage, grant and convey to the lender and lender's successors the Property in order to secure the repayment of the funds advanced and any future advances. In addition, the United States Supreme Court has defined a "mortgage" as being "an interest in real property that secures a creditor's right to repayment," *Johnson v. Home State Bank*, 501 U.S. 78, 82 (U.S. 1991), which was the purpose of the Credit Line Mortgage that securitized the HELOC at issue. While a home equity line of credit is not a traditional mortgage in that future advances, and not just the original amount advanced are secured by the same instrument, it nevertheless does give rise to a securitized lien against real property. Accordingly, the Credit Line Mortgage with respect to the HELOC is treated the same as any other mortgage lien.

In order to determine whether a subordinate mortgage lien can be "stripped off", the Court looks to section 506 of the Bankruptcy Code, which provides in pertinent part:

(a) (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

\* \* \*

3

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. §§ 506(a) and (d).  In this case, neither exception under section 506(d)(1) and (d)(2) is applicable.  Therefore, a lien that secures a claim that is not an allowed secured claim shall be void under section 506(d).

Defendant argues that the U.S. Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410 (1992), precludes this Court from "stripping off" the Credit Line Mortgage.  *Dewsnup* held that section 506(d) does not allow a debtor petitioner to "strip down" a lien held by respondent creditors, because such creditors' claim is secured by some value in the petitioner's real property.  *Dewsnup*, 502 U.S. at 417.  Similarly, in *Nobelman v. American Sav. Bank*, 508 U.S. 324, 328-31 (1993), the Supreme Court held that as long as *some* portion of a creditor's lien was secured by the debtor's residence in a chapter 13 case, the creditor would be considered a holder of a "claim secured only by ... the debtor's principal residence," and the creditor's rights in the entire lien were protected under the anti-modification exception of 11 U.S.C. § 1322(b)(2).  The facts in *Dewsnup* and *Nobelman* are similar in that each of the debtors sought to "strip down" a lien that was secured by some value in the debtor's property.  The cases differ in that the former is a chapter 7 case while the latter is a chapter 13 case.  However, both decisions were limited to its specific facts and thus, these cases should be narrowly construed.  Neither of these cases dealt with the "strip off" of a subordinate lien that is wholly unsecured by any value in the debtor's real property.

4

Some courts have held that the Supreme Court's reasoning in *Dewsnup* applied to a "strip off" as well as a "strip down", including a few in this district. *Talbert v. City Mortgage Services (In re Talbert)*, 344 F.3d 555 (6th Cir. 2003); *Ryan v. Homecomings Financial Network (In re Ryan)*, 253 F.3d 778 (4th Cir. 2001); *Laskin v. First Nat. Bank of Keystone (In re Laskin)*, 222 B.R. 872 (B.A.P. 9th Cir. 1998); *Pomilio v. MERS (In re Pomilio)*, 425 B.R. 11 (Bankr. E.D.N.Y. 2010); *In re Caliguri*, 431 B.R. 324 (Bankr. E.D.N.Y. 2010). However, in the Second Circuit, the present controlling precedent for a debtor's ability to "strip off" a subordinate mortgage lien that is wholly unsecured is the Court of Appeals' decision in *In re Pond*, 252 F.3d 122 (2d Cir. 2001). In light of *Pond*, the decisions of the other circuit courts and the bankruptcy courts in this circuit are persuasive but not controlling authority. *Jones v. Pilgram's Pride, Inc.*, 741 F. Supp. 2d 1272, 1277 (N.D. Ala. 2010)(noting that to the extent any bankruptcy courts, district courts or any other circuit courts have held otherwise, such decisions are only persuasive as the court must adhere to the circuit court decision in which it sits); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 160 B.R. 882, 898 (Bankr. S.D.N.Y. 1993).

In *Pond,* the Court of Appeals for the Second Circuit analyzed the *Nobelman* decision and noted that it is "correct to look to § 506(a) for a judicial valuation of the collateral to determine the status of a creditor's secured claim." *Id.*, 252 F.3d at 126 (quoting *Nobelman*, 508 U.S. at 328). The Second Circuit then concluded that in a chapter 13 case, a wholly unsecured claim pursuant to section 506(a) is not protected by the anti-modification exception of section 1322(b) and thus, a wholly unsecured subordinate mortgage lien can be declared void under section 506(d). *Pond*, 252 F.3d at 127. Other courts have dealt with wholly unsecured mortgage

5

liens in chapter 13 cases in a similar fashion.  *See e.g., Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1221 (9th Cir. 2002); *McDonald v. Master Fin., Inc.* (*In re McDonald*), 205 F.3d 606, 615 (3d Cir. 2000) (holding that wholly unsecured subordinate home equity mortgages are not subject to the anti-modification provision of section 1322 and can be voided).  These courts have held that a wholly unsecured lien is not "secured" within the meaning of section 506(a) of the Bankruptcy Code, and thus open to being voided under section 506(d) and section 1322(b)(2).

Some courts have held that *Pond* cannot be applied to a chapter 7 case because section 506(d) of the Bankruptcy Code serves the function of voiding a lien whenever the claim securing such lien has been disallowed.  *Talbert*, 344 F.3d at 559;  *Pomilio*,  425 B.R. at 16.  In a no asset chapter 7 case, it is argued that the claims adjudicative process would not be invoked because claims need not be filed and thus the subordinate mortgagee's claim is deemed allowed pursuant to 11 U.S.C. § 502(a).   In a chapter 13 case, the plan provides for the allowance and disallowance of claims.  *Caliguri*, 431 B.R. at 327-28.

Section 502(a) of the Bankruptcy code provides that "[a] claim or interest . . . is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  Regardless of whether there are assets available for distribution in a chapter 7 case, where a debtor,  a "party in interest", commences an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2) to "determine the validity, priority, or extent of a lien or other interest in property" there is a formal objection to such creditor's lien or interest in property.  There need not be a filed proof of claim in order to determine whether the claim or interest against the Debtor's property should be allowed or removed.   The determination of whether a lien or interest against property is unsecured and thus

6

disallowed as a secured claim is made independently of whether there are any assets available for distribution to general unsecured creditors.

There is no separate provision in the Bankruptcy Code for determining whether a lien or interest is secured for a no asset chapter 7 case as opposed to one with assets for distribution. Nor is there any statutory prohibition in the application of sections 506(a) and (d) to chapter 7 cases.

As the Court of Appeals in *Pond* noted, in making a judicial valuation of the collateral at issue to determine the status of a creditor's secured claim, it is proper to look to section 506. As this Court previously stated in *In re Lavelle*, No. 09-72389, 2009 Bankr. LEXIS 3795 (Bankr. E.D.N.Y. Nov. 25, 2009), "[t]he plain meaning is applied to Chapter 13 section 1322(b)(2) analysis where the lien is wholly unsecured, and there is no logical reason to read the text differently when applied to chapter 7 wholly unsecured liens." *Lavelle,* 2009 Bankr. LEXIS 3795, *16. Indeed, if sections 506(a) and (d) were intended only for the organizational chapters of the Bankruptcy Code, then Congress could have simply limited the language in sections 506(a) and (d) to exclude chapter 7.

Some argue that a bankruptcy discharge only extinguishes a creditor's ability to enforce a claim against a debtor *in personam* but leaves intact the creditor's rights against the debtor *in rem* and that a discharge of a wholly unsecured mortgage lien would result in a windfall to the debtor at the expense of the creditor. *Talbert*, 344 F.3d at 559-60; *Ryan*, 253 F.3d at 781-82; *Pomilio,* 425 B.R. at 15-16; *Caliguri*, 431 B.R. at 328. Again, this Court looks to the Second Circuit decision in *Pond* and finds that the effect of a discharge on a creditor whose wholly unsecured mortgage lien is "stripped off" should not be different whether the debtor files a

7

chapter 7 or chapter 13. Moreover, Chapter 7 debtors often do not have sufficient disposable income that would enable them to make regular payments under a chapter 13 plan. A chapter 7 creditor with a wholly unsecured mortgage claim may receive some distribution on its claim if there are assets for distribution to general unsecured creditors. Yet any windfall to a chapter 7 debtor as a result of avoidance of a wholly unsecured mortgage lien would not be greater than the debtor would have received if the debtor had filed for chapter 13 relief instead. Under *Pond*, chapter 13 debtors are permitted to void a wholly unsecured mortgage lien and often they only need to make payments under a plan on the recharacterized unsecured claim at a discount of the amount of the claim. However, as a chapter 13 debtor continues to make payments on the senior secured mortgage lien, the debtor is building up equity in the property that would never benefit the subordinate mortgagee whose claim had been recharaterized as wholly unsecured. If courts in this Circuit have to determine whether a wholly unsecured mortgage lien should be voided under sections 506(a) and (d) based upon whether the debtor files for chapter 7 or chapter 13 bankruptcy relief, then this would result in the treatment of a creditor's claim being subject to the whims of the debtor. While a subordinate mortgage lien is consensual and "bargained for", it is questionable that such mortgage lien holder bargained for different treatment of its lien under different chapters of the Bankruptcy Code with the debtor having control of the type of bankruptcy relief sought.

The Court recognizes that the economic climate may change in the future which would result in some equity in excess of the first mortgage lien that would benefit the subordinate mortgagee. However, in the present economic environment, even if a wholly unsecured, subordinate mortgage lien is not voided, a debtor who is unable to make payments on the senior

mortgage and/or the subordinate mortgage would have the automatic stay modified upon application of a mortgagee and the real property would be subject to a foreclosure sale that would not result in any recovery to the subordinate mortgagee. To the extent there is some value in the property securing a subordinate mortgagee's lien at the time a bankruptcy case is filed, *Dewsnup* and *Nobelman* would apply and whether the subordinate mortgage can be stripped off would not even be an issue.

Moreover, in analyzing the scope of the anti-modification clause under section 1322(b), the Third Circuit reasoned that, *inter alia,* second mortgages are similar to other general creditors and should not be entitled to the same protections given to a first mortgage on real property. The court stressed that:

> as Justice Stevens noted in his concurrence [in *Nobelman*], the antimodification clause's legislative history shows that the provision's "favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." 508 U.S. at 332, 113 S. Ct. 2112. Because second mortgages are rarely used to purchase a home, making wholly unsecured second mortgages subject to the antimodification clause would have at best a minimal impact in encouraging home building and buying. The holder of a second mortgage is apt to be very much like other general creditors, and therefore it seems reasonable that a wholly unsecured second mortgage will be subject to the same rules that apply to other secured claims--i.e., a claim not secured by any current value in the specified collateral is deemed an unsecured claim.

*In re McDonald*, 205 F.3d at 613. *See also, In re Zimmer*, 313 F.3d at 1227 (finding no evidence of any congressional policy in favor of promoting subsequent mortgages that are entirely unsecured due to a lack of equity in property). Given that wholly unsecured subordinate mortgage liens are treated like any other unsecured claims in a chapter 13, there is no reason why they should be given special protection in the context of a chapter 7. In light of this Circuit's decision in *Pond* and the reasons set forth in the foregoing, the Court finds no significant

differences between a chapter 7 and a chapter 13 that would warrant different treatment of a wholly subordinated mortgage lien under the same section of the Bankruptcy Code and there is no reason why the holding in *Pond* cannot be extended to chapter 7 cases.  Until there is superceding authority in this Circuit that holds otherwise, this Court finds that the application of *Pond* to a chapter 7 case, and in particular, the adversary proceeding before it, is appropriate.

Here, the Debtor has commenced this adversary proceeding as an objection to the Defendant's subordinate mortgage claim against his Property.  As discussed above, where the amount outstanding on the first mortgage is greater than the value of the Property, the Defendant's subordinate Credit Line Mortgage is wholly unsecured pursuant to section 506(a).  Because such Credit Line Mortgage is wholly unsecured, such mortgage lien held by the Defendant is null and void pursuant to section 506(d) and the mortgage claim shall be recharacterized as a general unsecured claim against the Debtor's bankruptcy estate.

<u>**CONCLUSION**</u>

Based upon the foregoing, Plaintiff's Motion seeking a determination that (1) the Defendant's subordinate mortgage lien is wholly unsecured pursuant to 11 U.S.C. § 506(a) and (2) such lien be deemed null and void pursuant to 11 U.S.C. § 506(d) is granted, and the Defendant's Cross-Motion is denied.

So Ordered.



**Dated: Central Islip, New York**
**November 1, 2011**

**Dorothy Eisenberg**
**United States Bankruptcy Judge**